## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ARIELLMARIE BERANGERE RANKINE** | : | |
| **Administratrix of the Estate of Deborah L. Brice** | : | |
| **615 Jeffrey Street** | : | |
| **Chester, PA 19013** | : | |
|                **PLAINTIFF** | : | **CIVIL ACTION - LAW** |
|     **v.** | : | |
| | : | **No. 2:26-cv-3072** |
| **DELAWARE COUNTY** | : | |
| **Government Center, 2d Floor** | : | |
| **c/o County Solicitor** | : | |
| **201 W. Front Street** | : | |
| **Media, PA 19063** | : | |
|       **And** | : | |
| **JANE DOE** | : | |
| **911 CALL OPERATOR** | : | |
| **Identification No. 54233** | : | |
| **c/o County Solicitor** | : | |
| **201 W. Front Street** | : | |
| **Media, PA 19063** | : | |
|       **And** | : | |
| **JANE DOE** | : | |
| **911 CALL OPERATOR** | : | |
| **Identification No. 54103** | : | |
| **c/o County Solicitor** | : | |
| **201 W. Front Street** | : | |
| **Media, PA 19063** | : | |
|       **and** | : | |
| **JOHN DOE(S) Police Officer(s)** | : | |
| **Badge No. 24358 and/or** | : | |
| **Occupant(s) of Police Car No. 2422** | : | |
| **160 E 7th Street** | : | |
| **Chester, PA 19013** | : | |
|       **And** | : | |
| **CHESTER CITY POLICE DEPARTMENT** | : | |
| **160 E 7th Street** | : | |
| **Chester, PA 19013** | : | |
|       **And** | : | |
| **CHESTER TOWNSHIP** | : | |
| **1840 Harris Street** | : | |
| **Chester, PA 19013-2619** | : | |
|       **And** | : | |
| **PROPSPECT CROZER, LLC d/b/a** | : | |
| **CROZER CHESTER MEDICAL CENTER** | : | |

**1 Medical Center Blvd.**          :
**Chester, PA 19013**          :
  **And**          :
**Jane Doe, EMS EMPLOYEE #1**          :
**c/o Crozer Chester**          :
  **and**          :
**John Doe, EMS EMPLOYEE #2**          :
**c/o Crozer Chester**          :
  **and**          :
**VS WALLINGFORD, LLC d/b/a**          :
**THE RESIDENCES AT CHESTNUT RIDGE**          :
**2700 Chestnut Parkway**          :
**Chester, PA 19013**          :
  **And**          :
**MORNINGSIDE ELITE MANAGEMENT, LLC:**
**128 Old Town Road, Suite C**          :
**Setauket, NY  11733**          :
     **DEFENDANTS**          :

---

## COMPLAINT

### THE PARTIES:

1. Plaintiff, Ariellmarie Berangere Rankine (hereinafter referred to as "Administratrix"), is an adult individual, who resides at 615 Jeffrey Street, Chester, PA 19013.

2. Ms. Rankine is the duly appointed Administratrix of the Estate of the Decedent Deborah L. Brice.

3. Plaintiff, Deborah L. Brice (hereinafter referred to as "Decedent") was an adult female individual, who resided in Chester City, Delaware County, PA.

4. Defendant Delaware County is a public entity with offices located at the above-listed address.

5. Defendant Delaware County operates the 911 service covering the catchment area 2700 Chestnut Parkway, Chester, PA.

6. Delaware County through its Department of Emergency Services is responsible for the acts and omissions of 911 operators.

7. Jane Doe 911 Operator No. 54233 is an unknown person, who was working on behalf of Delaware County, in the provision of 911 Operator services on the date in question.

8. Jane Doe 911 Operator No. 54103 is an unknown person, who was working on behalf of Delaware County, in the provision of 911 Operator services on the date in question.

9. Police Officer Badge No. 24358 is an unnamed police officer employed by the local police department responsible for the location of the decedent on the date in question. This person was an occupant of Police Unit No. 2422.

10. The City of Chester Police Department at the time of the incidents detailed herein employed the Officer identified as Badge No. 24358 and occupying Unit No. 2422.

11. Chester Township at the time of the incidents detailed herein employed the Officer identified as Badge No. 24358 and occupying Unit No. 2422.

12. Defendant, Prospect Crozer, LLC d/b/a Crozer Health and also d/b/a Crozer Chester Medical Center (hereinafter referred to as "Crozer") is a limited liability corporation with a place of business formerly known as Crozer Chester Medical Center, which is located at 1 Medical Center Blvd., Upland, PA 19013.

13. Defendant Crozer was responsible for and operated the Emergency Medical Service in Delaware County, including the location of the Residences at Chestnut Ridge.

14. Emergency Medical Personnel employed by Crozer were responsible for responding to calls for ambulances in the area where the events described herein occurred.

15. Upon information and belief, Jane Doe EMS Employee #1 (hereinafter EMT #1) is an emergency medical technician, who was employed by Crozer, and, at all times pertinent, was acting within the course and scope of her duties.

16. EMT #1 was at all times acting under the color of state law.

17. Upon information and belief, John Doe EMS Employee #2 (hereinafter EMT #2) is an EMT, who was employed by Crozer, and, at all times pertinent, was acting within the course and scope of his or her duties.

18. EMT #2 was at all times acting under the color of state law.

19. Defendant VS Wallingford, LLC d/b/a The Residences at Chestnut Ridge (hereinafter "Chestnut Ridge") owns and/or operates or is otherwise responsible for all aspects of an apartment building located at 2700 Chestnut Street, Chester, PA 19013.

20. Upon information and belief, Defendant Chestnut Ridge is a Pennsylvania corporation with its principal place of business at the above-listed address.

21. Upon information and belief, Defendant Morningside Elite Management, LLC (hereinafter "Morningside") is responsible for the management and operations of The Residences at Chestnut Ridge.

22. Upon information and belief, Defendant Morningside Elite Management, LLC is a New York corporation with its principal place of business at the above-listed address.

23. Those sovereign Defendants entitled to notice either were placed on notice pursuant to pertinent Tort Claims Act statutes or had actual notice of the events detailed herein. Copies of the pertinent notices are annexed hereto as Exhibit C.

**<u>FACTUAL AVERMENTS</u>**

24. Before May 6, 2024, the Decedent was a 69-year-old female, who was staying with her elderly friend, Mary E. Boardley, who lived in Apt. 904 at Defendant Chestnut Ridge at 2700 Chestnut Street.

25. All events referred to herein occurred in Delaware County.

26. From April 30, 2024 through May 6, 2024, the Decedent was operating as a friendly caregiver for her friend Mary E. Boardley.

27. During that period, the Decedent would sleep over at the Residences at Chestnut Ridge.

28. Upon information and belief, in the early morning hours of May 6, 2024 at approximately 4:42 o'clock AM, the Decedent called 911 asking for help.

29. The full substance of the 911 call is annexed hereto as Exhibits A and B.

30. Operator No. 54233 took the initial 911 call.

31. The audio demonstrates someone in serious medical distress gasping for words and saying "help me."

32. The operator clearly was aware that the decedent was having difficulty responding to questions and was heard moaning in pain.

33. The operator identified the caller's address and apartment number.

34. Upon information and belief, Operator 54233 sent a police officer to investigate and did not send EMS.

35. At 4:44 A.M. the records indicate that 911 Operator No. 54103 became involved in the incident or call.

36. During these events, the caller can be heard groaning or crying on the open phone line.

37. Upon information and belief, the 911 Operators call sheet and other documentation do not reflect any effort to have EMS personnel respond to the caller's address.

38. This failure, among others, caused or contributed to causing the decedent's death.

39. The 911 Operators each knew that EMS was required to make entry to the caller's location and evaluate the caller.

40. Nevertheless, instead of sending EMS, the 911 Operators decided to send a police department unit to investigate.

41. Upon information and belief, police department vehicle No. 2422, with police officer Badge No. 24358 arrived on the scene at 4:50 am.

42. Upon information and belief, despite knowing the 911 caller's apartment number in the building and hence her exact location, the Police Officer made no effort to access the apartment building, Residences at Chestnut Ridge.

43. Upon information and belief, upon arrival at Chestnut Ridge the police encountered a locked front door and could not access the interior of the building.

44. The 911 Operators were then made aware that the Officer could not enter the building to contact the caller at her apartment.

45. Upon information and belief, the 911 Operators were aware that the Police Officer did not reach the caller and simply canceled any further efforts to determine the status of the caller.

46. The 911 Operators abandoned the Decedent and she died as a result.

47. Upon information and belief, EMS employees may have gone to the location, but failed to make entry to the building and failed to contact the Decedent.

48. After the event concluded and the decedent was discovered, upon information and belief, the Chief of Police testified that there had been a breakdown in the emergency response to this 911 call.

49. Within an hour or so of the 911 call, at approximately 6:05 o'clock AM, a friend or family member of Mary E. Boardley called Chestnut Ridge and spoke with Defendant Jane Doe Employee.

50. In that conversation, a Chestnut Ridge or Morningside employee was asked if EMS had shown up at Chestnut Ridge.

51. That employee denied that she had seen EMS personnel.

52. The same employee was then asked by the concerned caller to go and perform a wellness check on Mary E. Boardley.

53. The employee agreed to go and check on Mary E. Boardley in the apartment.

54. At approximately 6:25 o'clock AM, the employee told the caller that she had checked on the apartment and that both were sleeping.

55. The employee told the caller that she did not go inside the apartment or see the occupants because she did not want to wake them.

56. The employee was then asked to return to the apartment and ensure that the occupants were alive and well.

57. The employee agreed to do so after she finished work at her desk on a matter.

58. At some point after 7 o'clock AM, entry was made into the apartment and the Decedent was found deceased and still seated in an armchair with a phone clutched in her hand.

59. The Coroner's Death Certificate lists the time of death as 7:05 o'clock AM.

60. This was approximately two hours after the 911 call was initially made.

61. After the decedent was located, one of the EMT's, who may have been initially dispatched by 911, admitted that she made no effort to enter the building or the apartment.

62. EMS personnel are required to make entry and contact the 911 caller in similar circumstances.

63. Defendant Chestnut Ridge and Morningside failed to have an employee at the Residences during this early morning period to arrange access to the building for police or EMS.

64. Defendant Chestnut Ridge and Defendant Morningside failed to have a posted message for first responders on how to gain entry to the building.

65. Defendants Chestnut Ridge and Morningside failed to have a knox box or other similar device, which is used by first responders to gain entrance to similar buildings in case of emergency.

66. The Decedent is survived by the Administratrix and her brother and several grandchildren.

## COUNT I

**Civil Rights Claim – 14th Amendment – 42 USC § 1983**
**PLAINTIFF v. 911 OPERATOR DEFENDANTS**
**Denial of Medical Care**

67. Plaintiff realleges and incorporates herein, as though set forth in full, all paragraphs above.

68. 911 Operators Nos. 54233 and 54103, acting on behalf of Delaware County and in conjunction with the Police, EMS, and Crozer, violated the Decedent's "substantive due process rights" under the Due Process Clause of the Fourteenth Amendment.

69. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State . . . shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 2.

70. The purpose of the 911 Operators' employment is to assist callers, such as the Decedent, who call and request help for a serious medical need.

71. The 911 Operators Nos. 54233 and 54103 were deliberately indifferent to known and obvious dangers to the decedent and violated her rights under the Fourteenth Amendment of the U.S. Constitution and denied her medical treatment by engaging in affirmative conduct that placed Ms. Brice in greater danger and denied her medical care in one or more of the following ways:

   a. The 911 Operators knew that Plaintiff was in serious medical need in that she had called 911, cried for help, was unable to respond to verbal questions by the 911 Operators, and was heard crying and/or groaning.

   b. The 911 Operators were deliberately indifferent to the Decedent's serious medical need when they assigned a police officer rather than EMS to respond to the caller's location.

   c. In refusing to provide the Decedent with prompt medical attention for her serious medical needs, including dispatching paramedics to care for the decedent, when the dispatcher knew that the decedent had called 911 for help and was plainly in distress and struggling to respond to questions;

   d. In failing to ensure that the decedent was safely transported to a hospital;

   e. In refusing to obtain a medical evaluation for the Decedent.

   f. In abandoning the Decedent without having her evaluated.

   g. As a foreseeable and direct result of the actions and inactions of Defendant 911 Operators, as set forth in the paragraphs above, the Decedent endured and

suffered severe physical and emotional distress, her medical condition was exacerbated, and she died as a result.

h.  The Decedent's family has endured and suffered physical distress and severe emotional distress. They have been denied her love, society, and companionship. The Decedent's estate incurred expenses for medical services, burial services, and memorial services. The Decedent's estate and her family are entitled to compensatory damages in whatever amount the jury concludes is appropriate.

i.  The actions of the 911 Operators were grossly negligent, as well as recklessly and deliberately indifferent to the civil rights of the Decedent and callously disregarded the Decedent's physical safety.

j.  As a result, punitive damages should be awarded in whatever amount the jury concludes is appropriate.

k.  Plaintiffs are entitled to necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

## COUNT II

### Civil Rights Claim – 14th Amendment – 42 USC § 1983
### PLAINTIFF v. 911 OPERATOR DEFENDANTS
### State Created Danger

72. Plaintiff realleges and incorporates herein, as though set forth in full, all paragraphs above.

73. The 911 Operators, acting on behalf of Delaware County and in conjunction with the Police, EMS, and Crozer, violated the Decedent's "substantive due process rights" under the Due Process Clause of the Fourteenth Amendment.

74. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State . . . shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 2.

75. The Defendant 911 Operators are liable under the state-created danger theory.

76. The 911 Operators conduct in sending police officers to the 911 Caller's building rather than EMS, in recognizing that the Police did not gain access to the apartment containing the caller, in not responding to the Police Officer's failure to make contact with the caller by sending EMS personnel to examine the caller, and in preventing the caller access to urgent evaluation and medical care violated her due process rights.

77. Given the tenor and pleas of the caller, the harm ultimately caused to the Decedent was readily foreseeable.

78. The 911 Operators wholesale failure to send EMS for a caller begging for help shocks the conscience of our society.

79. The 911 Operators' decisions prevented EMS personnel from contacting the decedent in that the 911 personnel decided that the police attempts were sufficient and no further intervention was needed.  This shocks the conscience.

80. The Decedent was the obvious and foreseeable victim of the Operators' decision making.

81. The Operators' decisions prevented the decedent from being evaluated either by the Police or EMS personnel.

82. Due to this conduct, the Decedent was left to die in her chair, when EMS personnel would have gained entry to her location and saved her life.

83. The purpose of Defendants' employment is to assist callers, such as the decedent, who call and request help for a serious medical need.

84. The audio of the 911 call is available and annexed hereto as Exhibit A.

85. Operator No. 54233 took the initial 911 call.

86. The audio demonstrates someone in serious medical distress gasping for words and saying "help me."

87. The operator clearly was aware that the decedent was having difficulty responding to questions and was heard moaning in pain.

88. The operator identified the caller's address and apartment number.

89. Upon information and belief, Operator 54233 sent a police officer to investigate and did not send EMS.

90. At 4:44 A.M. the records appear to demonstrate that 911 Operator No. 54103 became involved in the incident or call.

91. During that period, the caller can be heard groaning or crying on the open phone line.

92. Upon information and belief, the 911 Operator did not make any effort to have EMS personnel respond to the caller's address.

93. The 911 Operators knew that EMS were required to make entry to the caller's location and evaluate the caller.

94. Instead of sending EMS, the 911 Operators decided to send a police department unit to investigate.

95. Upon information and belief, police department unit No. 2422, with police officer Badge No. 24358 arrived on the scene at 4:50 am.

96. Upon information and belief, despite knowing the 911 caller's exact location, the police officer made no effort to access the apartment building, Residences at Chestnut Ridge.

97. The 911 Operators were aware that the officer could not gain entry to the building to contact the caller at her apartment.

98. Upon information and belief, the 911 Operators were aware that the Police Officer did not reach the caller and simply canceled any further efforts to determine the status of the caller.

99. This is deliberate indifference.

100. After the decedent was discovered, upon information and belief, the Chief of Police testified that there had been a breakdown in the emergency response to this 911 call.

101. Defendant 911 operator No. 54233 and 54103 were deliberately indifferent to known and obvious dangers to the decedent and violated her rights under the Fourteenth Amendment of the U.S. Constitution and denied her medical treatment by engaging in affirmative conduct that placed Ms. Brice in greater danger, in one or more of the following ways:

    a. The 911 Operators knew that Plaintiff was in serious medical need in that she had called 911, cried for help, was unable to respond to verbal questions by the 911 Operators and was heard crying and/or groaning.

    b. The 911 Operators were deliberately indifferent to the Decedent's serious medical need when they assigned a police officer rather than EMS to respond to the caller's location.

c.  In failing to ensure that the Decedent was safely transported to a hospital;

d.  As a foreseeable and direct result of the actions and inactions of defendants as set forth in the paragraphs above, the Decedent endured and suffered severe physical and emotional distress, her medical condition was exacerbated, and she died as a result.

e.  The Decedent's family has endured and suffered physical distress and severe emotional distress. They have been denied her love, society, and companionship. The Decedent's estate incurred expenses for medical services, burial services, and memorial services. The Decedent's estate and her family are entitled to compensatory damages in whatever amount the jury concludes is appropriate.

f.  The actions of the 911 Operators were grossly negligent, as well as recklessly and deliberately indifferent to the civil rights of the Decedent and callously disregarded the Decedent's physical safety. As a result, punitive damages should be awarded in whatever amount the jury concludes is appropriate.

g.  Plaintiffs are entitled to necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

### COUNT III
### Negligence v. Defendant Delaware County
### *Monell* Claim

102.  The preceding paragraphs are incorporated herein by reference, as if fully set forth at length below.

103.  Defendant Delaware County is a County in Pennsylvania with the address listed above.

104. Defendant Delaware County is responsible for the provision of some Emergency Medical Services (hereinafter "EMS") as an agency or subdivision of its government.

105. Delaware County employed the two 911 Operators referenced above.

106. Delaware County is liable for the acts and omissions of the 911 Operators.

107. The Emergency Services Department assists Delaware County's residents, fire departments, police departments, and numerous emergency medical providers.

108. The Emergency Services Department works to mitigate, plan, and prepare for emergencies; educate the public about preparedness; coordinate emergency response and recovery efforts; and develop tools and identify resources to support the overall preparedness of Delaware County.

109. The Defendant's actions and/or omissions violated that duty to the Plaintiff.

110. Delaware County, through its 911 Operators, was grossly negligent in the following acts and or omissions:

   (1) The 911 Operators willfully and negligently failed to provide EMS services to the Decedent;

   (2) The 911 Operators abandoned the Decedent;

   (3) The 911 Operators failed to reach the 911 caller by any means necessary.

   (6) The 911 Operators failed to ensure that the Police or Fire Departments gained entry to reach the 911 caller:

   (8) Failed to contact employees of Chestnut Ridge or other Defendants to gain access to the facility;

   (9) Failed to contact a supervisor or seek further opinions and options before abandoning the caller without an examination;

111.    Upon information and belief, Delaware County, through its employees, made no good faith attempt to render emergency care to the Decedent.

112.    Upon information and belief, Delaware County made no good faith attempt to facilitate emergency care for the Decedent.

113.    Upon information and belief, Delaware County 911 personnel should have been trained on the need to gain entry and obtain an evaluation of 911 callers and simply disregarded their training or were not properly trained in responding to such situations.

114.    Upon information and belief, Delaware County is fully aware of how to respond to 911 callers who require treatment for a variety of ailments and proper responses are well-documented in statewide protocols.

115.    Despite the knowledge and ability to provide emergency medical care to the Decedent, the 911 Operators failed to made a good faith attempt to facilitate emergency care for the Decedent.

116.    Breaking doors down or other means of contacting callers are foreseeable events that personnel should be trained for and prepared to manage effectively.

117.    Failure to make any effort to reach the patient without being withdrawn from the call is an egregious, outrageous, and wanton failure to perform its function.

118.    As a direct and proximate result of breaching this duty to the patient, the decedent died without being evaluated by EMS personnel.

119.    Upon information and belief, had the Decedent received EMS attention, she would have recovered from her transient event and not expired.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant Delaware County in an amount in excess of $50,000.00 in

compensatory, economic, punitive, and non-economic damages, in addition to other damages permitted by law.

## COUNT IV

**Civil Rights Claim – 14th Amendment – 42 USC § 1983
PLAINTIFF v. POLICE OFFICER BADGE No. 24358
and/or Occupant(s) of Police Car No. 2422**

### Denial of Medical Care

120.   Plaintiff realleges and incorporates herein, as though set forth in full, all paragraphs above.

121.   Police Officer Badge No. 24358 (Hereinafter "Police Officer") and/or the Police Occupant of Unit No. 2422, acting on behalf of Chester Township and/or Chester City and in cooperation with the EMS and Crozer, violated the Decedent's "substantive due process rights" under the Due Process Clause of the Fourteenth Amendment.

122.   The Due Process Clause of the Fourteenth Amendment provides that "[n]o State . . . shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 2.

123.   The Police Officer was deliberately indifferent to known and obvious dangers to the Decedent and violated her rights under the Fourteenth Amendment of the U.S. Constitution and denied her medical treatment by engaging in affirmative conduct that placed Ms. Brice in greater danger and denied her medical care in one or more of the following ways:

  a.   The Police Officer knew that Plaintiff was in serious medical need, begging for help, having difficulty comprehending or responding to the operator indicating problems with cognitive function and that she had called 911 seeking help.

b. The Police Officer refused to provide the Decedent with prompt medical attention for her serious medical needs, including requesting paramedics to care for the decedent, when the Police Officer knew that the decedent had called 911 for help and was plainly in distress and struggling to respond to questions;

c. In failing to require that EMS be dispatched;

d. In failing to ensure that the Decedent was safely transported to a hospital;

e. In refusing to obtain a medical evaluation for the Decedent.

f. In abandoning the Decedent without having her evaluated.

g. As a foreseeable and direct result of the actions and inactions of the Police Officer knew, the Decedent endured and suffered severe physical and emotional distress, her medical condition was exacerbated, and she died as a result.

h. The Decedent's family has endured and suffered physical distress and severe emotional distress. They have been denied her love, society, and companionship. The decedent's estate incurred expenses for medical services, burial services, and memorial services. The Decedent's estate and her family are entitled to compensatory damages in whatever amount the jury concludes is appropriate.

i. The actions of the Police Officer were grossly negligent, as well as recklessly and deliberately indifferent to the civil rights of the Decedent and callously disregarded the Decedent's physical safety.

j. As a result, punitive damages should be awarded in whatever amount the jury concludes is appropriate.

k. Plaintiffs are entitled to necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

## COUNT V

**Civil Rights Claim – 14th Amendment – 42 USC § 1983
PLAINTIFF v. POLICE OFFICER BADGE No. 24358
and/or Occupant(s) of Police Car No. 2422**

### State Created Danger

124.   Plaintiff realleges and incorporates herein, as though set forth in full, all paragraphs above.

125.   The Police Officer and/or the Police Occupant of Unit No. 2422, acting on behalf of Chester Township and/or Chester City and in cooperation with the EMS and Crozer, violated the Decedent's "substantive due process rights" under the Due Process Clause of the Fourteenth Amendment.

126.   The Due Process Clause of the Fourteenth Amendment provides that "[n]o State . . . shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 2.

127.   The Police Officer is liable under the state-created danger theory.

128.   The Police Officer's conduct violated the Decedent's Civil Rights as follows:

   a.   The Police Officer was aware of the content of the substance of the initial 911 call.

   b.   The audio demonstrates someone in serious medical distress gasping for words and saying "help me."

   c.   The Police Officer was aware of the caller's address and apartment number.

   d.   The Police Officer was aware that the caller was in physical distress and having difficulty responding to questions.

e.  That the caller ultimately died was wholly foreseeable when the call was for "help me."

f.  The actions of the Police Officer should shock the conscience of the Court.

g.  The Officer was sent to investigate the information provided to the 911 Operators.

h.  Upon information and belief, the Police Officer made no effort to perform his duty.

i.  Upon information and belief, police department unit No. 2422, with police officer Badge No. 24358 arrived on the scene at 4:50 am, within 6 minutes of the call.

j.  It was the Officer's duty to investigate 911 calls when dispatched to respond to them.

k.  The Officer arrived on the scene on behalf of the City or Township and was there to provide assistance to the 911 caller.

l.  Plainly, a relationship existed between the caller and the Officer in that the Officer had been specifically directed to rescue or respond to the Decedent.

m.  Upon information and belief, despite knowing the 911 caller's exact location, either the police officer decided to not access the apartment building due to being prevented from entering the building by Chestnut Ridge and Morningside's policies and procedures or lack thereof.

n.  In doing so, the Officer elevated the apartment building's property over the civil rights of the Decedent.

o.  The Police Officer simply left the scene and in effect made a determination that the Decedent was not in need of police assistance and not in need of medical care.

The Officer's decision making thereby prevented any further contact with the Decedent, thereby resulting in her death.

129. The officer knew that the caller needed help and failed to obtain medical help from EMS personnel.

130. The Officer should have investigated the circumstances causing the 911 call but wholly failed to do so.

131. Given the tenor and pleas of the caller, the harm ultimately caused to the Decedent was readily foreseeable.

132. There was plenty of time for the Officer to make proper decisions to obtain care for the decedent.

133. The Officer was under so little pressure in this situation that they simply decided to abandon the 911 caller without taking any action at all.

134. Essentially, the Officer acted as if he had attended a non-event when in reality, the decedent was slowly dying.

135. The Police Officer's decision to not call for EMS to respond for a caller begging for help shocks the conscience of our society.

136. The Police Officer's decisions prevented EMS personnel from contacting the decedent

137. The 911 Operators then decided that the police attempts were sufficient and no further intervention was needed.  This shocks the conscience.

138. The Police Officer's decisions prevented the decedent from being evaluated either by EMS personnel.

139. Due to this conduct, the Decedent was left to die in her chair, when EMS personnel would have gained entry to her location and saved her life.

140. The audio of the 911 call is available and annexed hereto as Exhibit A.

141. The Police Officer was deliberately indifferent to known and obvious dangers to the decedent and violated her rights under the Fourteenth Amendment of the U.S. Constitution and denied her medical treatment by engaging in affirmative conduct that placed Ms. Brice in greater danger, in one or more of the following ways:

   a. The Officer knew that Plaintiff was in serious medical need in that she had called 911, cried for help, was unable to respond to verbal questions by the 911 Operators and was heard crying and/or groaning.

   b. The Officer was deliberately indifferent to the Decedent's serious medical need when they left the caller's location without either contacting the caller or obtaining entry to the location or obtaining EMS response.

   c. In failing to ensure that the decedent was safely transported to a hospital;

   d. As a foreseeable and direct result of the actions and inactions of the Police Officer as set forth in the paragraphs above, the Decedent endured and suffered severe physical and emotional distress, her medical condition was exacerbated, and she died as a result.

   e. The Decedent's family has endured and suffered physical distress and severe emotional distress. They have been denied her love, society, and companionship. The Decedent's estate incurred expenses for medical services, burial services, and memorial services. The Decedent's estate and her family are entitled to compensatory damages in whatever amount the jury concludes is appropriate.

f. The actions of the Police Officer were grossly negligent, as well as recklessly and deliberately indifferent to the civil rights of the Decedent and callously disregarded the Decedent's physical safety. As a result, punitive damages should be awarded in whatever amount the jury concludes is appropriate.

g. Plaintiffs are entitled to necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

**COUNT VI**
**Negligence v. Defendants Chester City**
**and Chester Township**
***Monell* Claim**

142. The preceding paragraphs are incorporated herein by reference, as if fully set forth at length below.

143. Defendant Chester City is a municipality in Pennsylvania with the address listed above.

144. Defendant Chester Township is a municipality in Pennsylvania with the address listed above.

145. One or both of these two municipalities was the employer of the Police Officer.

146. These Municipal defendants are responsible for the provision of police services, as an agency or subdivision of its government.

147. These municipalities are vicariously liable for the acts and omissions of the Police Officer.

148. The Defendant's actions and/or omissions violated a constitutional duty to the Decedent.

149. Upon information and belief, these municipalities' police officers should have been trained on the need to gain entry and obtain an evaluation of 911 callers.

150. Instead, the Officer either disregarded their training or were not properly trained in responding to such situations.

151. Upon information and belief, the municipalities are fully aware of how to respond to 911 callers, who require treatment for a variety of ailments, and proper responses are well-documented in statewide protocols.

152. Despite the knowledge and ability to provide police response to the Decedent, the Police Officer failed to made a good faith attempt to facilitate emergency care for the Decedent.

153. The failure by this officer was the direct result of poor training, deficient policies and procedures, and/or a custom of inadequate response to 911 callers.

154. This failure by the Municipalities was part and parcel of a pattern of conduct manifesting deliberate indifference to the needs of 911 callers.

155. The risk to the Decedent's constitutional rights was plain and obvious from the 911 call that resulted in the officer being dispatched to investigate.

156. The municipalities engaged in a custom of not properly training its officers to respond to 911 calls when their contact with the caller was blocked.

157. The municipalities engaged in a custom of not properly training its officers to make contact with all 911 callers until they were called off from the job or the investigation was cancelled.

158. The deliberate indifference of the municipalities to this training and operational failure can be inferred from the public statement of the supervising police officer that there had been a failure of a response to this exact situation.

159.    Moreover, the municipalities and involved supervisors failed to be involved in the decision-making of the police officer at the scene.

160.    A prior incident involving a Ms. Cappel in a similar situation should have highlighted this danger or failure of training and failure of policies to the municipalities.

161.    As a direct and proximate result of breaching this duty to the patient, the decedent died without being evaluated by the police or EMS personnel.

162.    Upon information and belief, had the Decedent received EMS attention, she would have recovered from her transient event and not expired.

163.    Breaking doors down or other means of contacting callers are foreseeable events that personnel should be trained for and prepared to manage effectively.

164.    Despite the knowledge and ability to provide emergency medical care to the Decedent, the municipalities failed to made a good faith attempt to facilitate emergency care for the Decedent.

165.    As a direct and proximate result of breaching this duty to the patient, the decedent died without being evaluated by EMS personnel.

166.    Upon information and belief, had the Decedent received EMS attention, she would have recovered from her transient event and not expired.

167.    Failure to make any effort to reach the patient without being withdrawn from the call is an egregious, outrageous, and wanton failure to perform its function.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant Chester City and Chester Township in an amount in excess of

$50,000.00 in compensatory, economic, punitive, and non-economic damages, in addition to other damages permitted by law.

### Count VII
### Negligence v. Defendants VS Wallingford, LLC d/b/a The Residences at Chester Ridge and Morningside Elite Management, LLC

168.	The preceding paragraphs are incorporated herein by reference, as if fully set forth at length below.

169.	Defendants VS Wallingford (hereinafter "Chester Ridge") was licensed to and or operated an apartment building located at 2700 Chestnut Parkway in Chester, Delaware County, Pennsylvania.

170.	Defendant Morningside Elite Management, LLC (hereinafter "Morningside") was licensed to and or operated an apartment building located at 2700 Chestnut Parkway in Chester, Delaware County, Pennsylvania.

171.	Defendants Chester Ridge and Morningside were responsible for ensuring that their facilities were safe for their intended usage.

172.	Defendants Chestnut Ridge and Morningside held themselves out to the public as safe places for our elderly citizens to live in an assisted living setting.

173.	Defendants Chestnut Ridge and Morningside owed a duty to the Decedent and to all residents, visitors, and tenants, who were business invitees.

174.	Defendants Chestnut Ridge and Morningside and owed visitors such as the Decedent the highest possible duty of care as she was a business invitee on the Defendants' premises.

175.    Defendants Chestnut Ridge and Morningside had a duty to inspect and discover known and unknown dangers to their tenants and visitors.

176.    Defendants Chestnut Ridge and Morningside owed the Decedent and all tenants and visitors access to Emergency Medical Services.

177.    The Chestnut Ridge and Morningside's actions and/or omissions violated their duty to the Plaintiff.

178.    The aforementioned incident and the resulting death of the Decedent directly and proximately resulted from the negligence of Defendants Chestnut Ridge and Morningside, whose conduct consisted of, but was not limited to, the following.

   a.  Locking the doors to the building;
   b.  Failing to have a Knox Box or other similar device permitting access to the building for first responders;
   c.  Preventing access to tenants' apartments by emergency services providers;
   d.  Failure to have readily visible contact information available to emergency services personnel in order to access tenants in the building;
   e.  Failure to have sufficient staff or employees on duty to permit access for emergency services personnel to tenants of the building;
   f.  Failure to maintain policies and procedures governing access for emergency services personnel.
   g.  Failure to have systems in place to monitor or detect the arrival of emergency services personnel;
   h.  Failure to properly vet, select, audit, monitor, and supervise those responsible employees and agents in the performance of their duties at Chestnut Ridge;
   i.  Failure to maintain guidelines for the proper performance of wellness checks at the request of family or friends of tenants.
   j.  Failure to properly staff the building in the overnight hours.

179.    Upon information and belief, upon arrival at Chestnut Ridge the police encountered a locked front door and could not access the interior of the building.

180.    As a direct and proximate result of those events described herein, the Decedent died without being evaluated by police and/or EMS personnel, whom she had called for.

181.   As a direct and proximate result of those events described herein, the Decedent died without receiving necessary medical attention.

182.   Defendants' operation of an apartment building made the failure to create a means of access for police and emergency services personnel an egregious, outrageous, and wanton failure to account for the foreseeable needs of its tenants and their guests.

   **WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants Chestnut Ridge and Morningside in an amount in excess of $50,000.00 in compensatory, economic, punitive, and non-economic damages, in addition to other damages permitted by law.

**COUNT VIII**
**Negligence v. Defendant Crozer**
**(Direct Corporate Negligence)**

183.   The preceding paragraphs are incorporated herein by reference, as if fully set forth at length below.

184.   Defendant Crozer operates Emergency Medical Services (hereinafter "EMS") within Delaware County, Pennsylvania through its EMS personnel and is responsible for responding to 911 calls and other emergencies at the location of Ms. Brice's death.

185.   Defendant Crozer is responsible for the acts and omissions of EMS personnel under its supervision.

186.   Defendant Crozer coordinates with Delaware County's 911 dispatch services.

187.   Defendant Crozer dispatches ambulance services within Delaware County, coordinates emergency management plans, and provides training and support to its EMT's.

188.   Crozer is responsible for training EMT's under its supervision or for whom it is responsible, so that they are prepared to do their job in any situation with which they are confronted.

189.   Crozer contracted with Delaware County to provide qualified and professional EMT's.

190.   Defendant employed or was otherwise vicariously liable for EMT #1 and EMT #2.

191.   This Count sounds in direct corporate negligence.

192.   Upon information and belief, in the event that EMS personnel did go to Chestnut Ridge, they were grossly negligent in their failure to reach the Decedent and violated EMS training and regulations.

193.   This Defendant is liable to the Plaintiff for its failure to contact and evaluate the Decedent, though it had contracted to operate EMS services.

194.   Crozer owed a duty of care to Decedent by virtue of its contractual duties to provide EMS services within the standard of care.

195.   Crozer breached that duty of care and fell below the applicable standard of care.

196.   Crozer is the sole and exclusive provider of EMS personnel covering Chestnut Ridge, including the residence where Deborah Brice was staying.

197.   In situations involving refusal of treatment by a patient, EMT's are not allowed to leave a scene without first checking the patient's vital signs.

198.   Upon information and belief, an EMT may only allow refusal of medical evaluation, treatment and/or transport when all the following conditions are met: a) the patient is conscious and alert and has the freedom to act without undue influence from

family or friends and b) the patient's medical condition is stable, and thus not subject to the doctrine of implied consent; and c) the patient possesses sufficient information about the associated risks and benefits of all treatment options, which include refusal of care; and d) the patient has the ability to use this information to make a decision and communicate their choice.

199.    Any decision by a patient to refuse transport must be documented by the patient signing a form after the EMT on scene calls the Medical Director, a physician, who must first sign off on a non-transport.

200.    The EMT's were required to call their Medical Director and document doing so. They were further required to document how Brice's decision-maker status and competency were determined. They were also required to document the circumstances surrounding the patient refusal, and all actions they took to persuade the patient to accept medical treatment, including calling the Medical Director.

201.    None of this was done.

202.    As a direct and proximate result of those events described herein, the decedent died without being evaluated by EMS personnel.

203.    As a direct and proximate result of those events described herein, the decedent died without receiving necessary medical attention.

204.    The actions of Crozer and its employees for whom it was responsible were grossly negligent, recklessly indifferent, and callously disregarded Deborah Brice's physical safety.

205.     EMS personnel's failure to follow basic procedures and obtain entry to the decedent's residence, evaluate her, and determine her condition and medical needs constitutes a reckless disregard and wanton conduct.

206.      The behavior of the EMT's was a flagrant deviation from the standard of care and constituted wanton and reckless indifference to the rights of Ms Brice.

207.     Punitive damages are warranted because the Defendant simply ignored the standard of care.

208.     EMT's #1 and #2 and their employer Crozer knew that responding to a 911 call and failing to perform an evaluation of the caller was an abject disregard of fundamental principles of EMS procedures.

209.     The Defendant and its employees knew that failure to make entry and perform an evaluation of a 911 caller could result in death or grievous injury.

210.     As a direct result of Defendants' gross negligence, Deborah Brice's medical condition was exacerbated and she died as a result of not receiving necessary medical care.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant Crozer in an amount in excess of $50,000.00 in compensatory, economic, punitive, and non-economic damages, in addition to other damages permitted by law.

**COUNT IX**
**Plaintiff v. Defendant Crozer**
**(Vicarious Liability)**

211.     The preceding paragraphs are incorporated herein by reference, as if fully set forth at length below.

212.     This Count asserts a claim of vicarious liability.

213. This Defendant is liable to the Plaintiff for its failure to contact and evaluate the Decedent through its EMS personnel, who were required to do so on Defendant's behalf.

214. This Defendant is vicariously liable to the Plaintiff for the acts and omissions of its workmen, servants, employees, contractors or other individuals acting, intending to act, or failing to act on its behalf.

215. As a direct and proximate result of those events described herein, the decedent died without being evaluated by EMS personnel.

216. As a direct and proximate result of those events described herein, the decedent died without receiving necessary medical attention.

217. The actions of Crozer for whom it was responsible were grossly negligent, recklessly indifferent, and callously disregarded Deborah Brice's physical safety.

218. EMS personnel's failure to follow basic procedures and obtain entry to the decedent's residence, evaluate her, and determine her condition and medical needs constitutes reckless disregard and wanton conduct.

219. The acts and omissions of the EMT's herein was a flagrant deviation from the standard of care and constituted wanton and reckless indifference to the rights of Ms Brice.

220. Punitive damages are warranted because the Defendant simply ignored the standard of care.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant Crozer in an amount in excess of $50,000.00 in compensatory, economic, punitive, and non-economic damages, in addition to other damages permitted by law.

## COUNT X
### Negligence v. Defendant EMS Employees

221.    The preceding paragraphs are incorporated herein by reference, as if fully set forth at length below.

222.    Defendant Crozer operates Emergency Medical Services (hereinafter "EMS") within Delaware County, Pennsylvania through its EMS personnel and is responsible for responding to 911 calls and other emergencies at the location of Ms. Brice's death.

223.    Defendant employed or was otherwise vicariously liable for EMT #1 and EMT #2.

224.    Upon information and belief, in the event that EMS personnel did go to Chestnut Ridge, they were grossly negligent in their failure to reach the Decedent and violated EMS training and regulations.

225.    This Defendant EMS Employees are liable to the Plaintiff for their failure to contact and evaluate the Decedent, who had called 911 for help.

226.    The EMS employees owed a duty of care to Decedent by virtue of their duties to provide EMS services within the standard of care.

227.    The EMS employees breached that duty of care and fell below the applicable standard of care.

228.    In situations involving refusal of treatment by a patient, EMT's are not allowed to leave a scene without first checking the patient's vital signs.

229.    Upon information and belief, an EMT may only allow refusal of medical evaluation, treatment and/or transport when all the following conditions are met: a) the patient is conscious and alert and has the freedom to act without undue influence from family or friends and b) the patient's medical condition is stable, and thus not subject to

the doctrine of implied consent; and c) the patient possesses sufficient information about the associated risks and benefits of all treatment options, which include refusal of care; and d) the patient has the ability to use this information to make a decision and communicate their choice.

230.    Any decision by a patient to refuse transport must be documented by the patient signing a form after the EMT on scene calls the Medical Director, a physician, who must first sign off on a non-transport.

231.    The EMT's were required to call their Medical Director and document doing so. They were further required to document how Brice's decision-maker status and competency were determined. They were also required to document the circumstances surrounding the patient refusal, and all actions they took to persuade the patient to accept medical treatment, including calling the Medical Director.

232.    None of this was done.

233.    As a direct and proximate result of those events described herein, the decedent died without being evaluated by EMS personnel.

234.    As a direct and proximate result of those events described herein, the decedent died without receiving necessary medical attention.

235.    The actions of Crozer and its employees for whom it was responsible were grossly negligent, recklessly indifferent, and callously disregarded Deborah Brice's physical safety.

236.    EMS personnel's failure to follow basic procedures and obtain entry to the decedent's residence, evaluate her, and determine her condition and medical needs constitutes a reckless disregard and wanton conduct.

237. The behavior of the EMT's was a flagrant deviation from the standard of care and constituted wanton and reckless indifference to the rights of Ms Brice.

238. Punitive damages are warranted because the Defendant simply ignored the standard of care.

239. EMT's #1 and #2 and their employer Crozer knew that responding to a 911 call and failing to perform an evaluation of the caller was an abject disregard of fundamental principles of EMS procedures.

240. The Defendant and its employees knew that failure to make entry and perform an evaluation of a 911 caller could result in death or grievious injury.

241. As a direct result of Defendants' gross negligence, Deborah Brice's medical condition was exacerbated and she died as a result of not receiving necessary medical care.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant EMS employees in an amount in excess of $50,000.00 in compensatory, economic, punitive, and non-economic damages, in addition to other damages permitted by law.

### COUNT XI
### Negligence v. All Defendants
### (Loss of a Chance)

242. The preceding paragraphs are incorporated herein by reference, as if fully set forth at length below.

243. The Defendant's acts and/or omissions violated its duty to the Plaintiff.

244. The aforementioned incident and the resulting death of the decedent directly and proximately resulted from the negligence of Defendant Prospect CCMC and the EMT's for whom it was responsible.

245. Defendant Prospect CCMC is vicariously liable to the Plaintiff and her decedent for the acts and omissions of its employees, servants, workmen, contractors, and others under its control.

246. As a direct and proximate result of breaching this duty to the patient, the decedent died without being evaluated by EMS personnel whom she had called for.

247. Upon information and belief, had Decedent received EMS attention, she would have recovered from her condition and not expired.

248. The Defendant's undertaking to render services to another, which it should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

249. Ms. Brice was deprived, on a more probable than not basis, of treatment which more likely than not would have provided her with a better chance of (1) receiving emergency medical evaluation and treatment; (2) immediately receiving highly effective interventions to treat her life-threatening medical condition and; (3) immediately starting Ms. Brice in a cardiac or other protocol; and (4) being cured.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against all defendants in an amount in excess of $50,000.00 in compensatory, economic, punitive, and non-economic damages, in addition to other damages permitted by law.

## COUNT XII

### Wrongful Death As to All Defendants

Wrongful Death -- 42 Pa.C.S.A. Section 8301

The Estate of Deborah Brice realleges and incorporates herein, as though set forth in full, all paragraphs above.

250.    As a result of the fault and liability of the Defendants, Deborah Brice was caused to die and her estate sustained damages as outlined in the paragraphs above.

251. Prior to instituting this action, plaintiffs provided notice of this claim to the Sovereign Defendants, pursuant to 42 Pa. C.S.A. §5522.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against all defendants in an amount in excess of $50,000.00 in compensatory, economic, punitive, and non-economic damages, in addition to other damages permitted by law.

## COUNT XIII

### Survival Action – 42 Pa.C.S.A. Section 8302

252. The Estate of Deborah Brice realleges and incorporates herein, as though set forth in full, all paragraphs above.

253. As a result of the fault and liability of the Defendants, Deborah Brice underwent conscious physical and mental pain and suffering prior to her death.

254. The actions of the Defendants callously disregarded Brice's physical safety, and foreseeably caused emotional distress to her kin.

Brice's estate is entitled to compensatory as well as punitive damages as well as their attorney fees and costs, which should be awarded in whatever amount the jury concludes is appropriate.

255. Prior to instituting this action, plaintiffs provided notice of this claim to the Sovereign Defendants pursuant to 42 Pa. C.S.A. §5522.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against all defendants in an amount in excess of $50,000.00 in compensatory, economic, punitive, and non-economic damages, in addition to other damages permitted by law.

Respectfully submitted,
**NEUWIRTH LAW OFFICE, LLC**

Date:   5/6/2026                        By:   */s/ Andrew T. Neuwirth*
                                        Andrew T. Neuwirth, Esquire
                                        Attorney for Plaintiff