**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ARIELLMARIE RANKINE,<br><br>        *Plaintiff,*<br><br>   v.<br><br>DELAWARE COUNTY, et al.,<br><br>        *Defendants.* | CIVIL ACTION<br>NO. 26-3072 |

**Pappert, J.**                                                                 **June 16, 2026**

## MEMORANDUM

Deborah Brice called 911 after experiencing a medical emergency. Sadly, no police officer or medical responder reached her in time and she died. Ariellmarie Rankine, the administratrix of Brice's estate, sued (among others) Delaware County and two county 911 operators under 42 U.S.C. § 1983 and Pennsylvania law. The County and the operators move to dismiss the claims against them, and the Court grants their motion in part.

I

During the first week of May 2024, Brice was staying with her friend Mary Boardley, acting as Boardley's caregiver. (Compl. ¶¶ 24, 26–27, Dkt. No. 1.) Brice was sixty-nine, and Boardley was "elderly." (*Id.* ¶ 24.) Boardley lived at the Residences at Chestnut Ridge, an apartment complex in Delaware County. (*Id.* ¶¶ 19, 24–25.)

In the early morning hours of May 6, Brice had a medical emergency, (*id.* ¶¶ 28, 31), and at 4:42 am, called 911, (*id.* ¶ 28). Brice was struggling to answer questions, groaning, gasping for air and saying "help me." (*Id.* ¶¶ 31–32, 71.) A few minutes later, another 911 operator joined Brice's call. (*Id.* ¶ 35.) Instead of sending emergency

1

medical responders to Brice, the operators sent a local police officer.  (*Id.* ¶ 40); (Pl.'s Mem. of L. in Supp. of Opp'n at 2–4, Dkt. No. 10-1.)

The officer arrived at Chestnut Ridge around 4:50 am but the front door was locked.  (Compl. ¶¶ 41, 43.)  No Chestnut Ridge employee was present to let the officer inside, and the apartment complex did not have a "knox box," a device that allows emergency responders to access buildings.  (*Id.* ¶¶ 63–65.)  The officer left the scene, making no effort to find or break his way into the complex.  (*Id.* ¶ 42.)  The 911 operators learned that the officer did not reach Brice, but they made no further effort to help her.  (*Id.* ¶¶ 44–46.)

About an hour later, at 6:05 am, Boardley's friend called Chestnut Ridge and asked one of its employees to check on Boardley and Brice.  (*Id.* ¶¶ 49–52.)  The employee went to Boardley's room but did not go inside and told Boardley's friend that the women were sleeping.  (*Id.* ¶¶ 54–55.)  Boardley's friend asked the employee to enter the apartment and confirm they were "alive and well."  (*Id.* ¶ 56.)  The employee said she would but only after finishing a task she had just started.  (*Id.* ¶ 57.)  At some point after 7:00 am, the employee found Brice dead in a chair, holding her phone.  (*Id.* ¶ 58.)  The coroner said Brice died at 7:05 am, approximately two hours after she had called 911.  (*Id.* ¶¶ 59–60.)  The local chief of police acknowledged there was a "breakdown" in the response to Brice's 911 call.  (*Id.* ¶ 48.)

In Counts One and Two of the Complaint, Rankine alleges the 911 operators violated Brice's due process rights under the Fourteenth Amendment to the United States Constitution.  She also seeks, in Count Three, to hold the County liable for the

operators' alleged misconduct. And Counts Eleven through Thirteen assert state-law negligence, wrongful death and survival claims against all defendants.

II

The Court assesses the sufficiency of a pleading before discovery under Federal Rules of Civil Procedure 8 and 12. Rule 8(a)(2) provides that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And Rule 12(b)(6) permits a district court to dismiss a complaint that fails "to state a claim upon which relief can be granted." *Id.* 12(b)(6). Taken together, the two rules require a plaintiff to allege sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The first step in determining whether a plaintiff has stated a plausible claim is to "tak[e] note of the elements" underlying her claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009); *Santiago v. Warminster Township*, 629 F.3d 121, 129–30 (3d Cir. 2010). The second step is to examine the plaintiff's complaint and determine whether the factual allegations "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Plausibility requires the plaintiff to plead sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The reasonableness of an inference depends on common sense and the strength of competing explanations for the defendant's conduct. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016); *Iqbal*, 556 U.S. at 682. Plaintiffs do not meet the plausibility burden when the facts alleged are "merely consistent with a defendant's liability" or show nothing "more than a sheer possibility that a defendant

3

has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).  In gauging the plausibility of a claim, the Court must accept as true all well-pleaded factual allegations, construe those facts in the light most favorable to the plaintiff and draw reasonable inferences from them.  *Connelly*, 809 F.3d at 786 n.2.

III

Section 1983 makes "liable" "[e]very person" who "under color of" state law "subjects" another person "to the deprivation of any rights, privileges, or immunities secured by the Constitution" and federal law.  42 U.S.C. § 1983.  This provision contains no substantive rights.  *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).  It merely provides a cause of action for vindicating rights found in the United States Constitution or another federal law.  *See id.*

A

Rankine claims the 911 operators were deliberately indifferent to Brice's serious medical needs, violating Brice's right to due process under the Fourteenth Amendment. But because the operators did not place Brice in custody or restrain her, due process did not require them to give her medical care.

"No State," the Fourteenth Amendment says, "shall . . . deprive any person of life, liberty or property, without due process of law."  U.S. Const. amend. XIV, § 1.  In *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), the Supreme Court held that state officials did not violate due process by failing to protect a child from his father's abuse even though they knew of the abuse and did not remove the child from harm's way.  *Id.* at 191.  Due process, the Supreme Court held, "generally confer[s] no affirmative right to governmental aid, even where such aid may

4

be necessary to secure life, liberty, or property." *Id.* at 196. The Supreme Court recognized one exception to this rule: When the State has so restrained the liberty of the individual that it renders him unable to care for himself, the State has a special relationship with the individual and thus an affirmative "duty to assume some responsibility for his safety and general well-being." *Id.* at 200. It is the "State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause." *Id.* Thus, to show the 911 operators owed Brice medical care, Rankine must allege the operators placed Brice in custody or otherwise restrained her liberty in way that prohibited her from taking care of herself. *See Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006); *Horton v. Flenory*, 889 F.2d 454, 458 (3d Cir. 1989). She has not and cannot do so.

The 911 operators answered Brice's call and sent a police officer to her location. They did not control, limit or restrain Brice against her will. *Walton v. Alexander*, 44 F.3d 1297, 1303–04 (5th Cir. 1995). Thus, due process did not require them to render aid. *Cf. Bennett ex rel. Irvine v. City of Philadelphia*, 499 F.3d 281, 289 (3d Cir. 2007) ("Without legislative activity, we are not prepared to hold that a city that fails to respond promptly to a 911 call must pay for the harm that befalls the caller as a result of the failure.").

Rankine responds that Brice submitted to the 911 operators' control when she called them. But in answering and responding to her call, the operators did not place Brice in custody or restraint—as numerous cases demonstrate. *See, e.g., Beltran v. City*

*of El Paso*, 367 F.3d 299, 307 (5th Cir. 2004) (holding a 911 operator did not affirmatively place a caller in custody or restraint by telling her to lock herself in a bathroom); *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 911 (6th Cir. 1995) (school bus driver did not restrain a child who had a seizure because her "medical condition" was not a "restriction[] imposed . . . by the state"); *Jackson v. Schultz*, 429 F.3d 586, 591 (6th Cir. 2005) (emergency medical technicians did not restrain an individual when they transported him to a hospital in an ambulance because they neither injured the individual, causing him to need medical care, nor handcuffed him); *Willis v. Charter Township of Emmett*, 360 F. App'x 596, 600 (6th Cir. 2010) (state officers did not restrain a car-accident victim when they failed to treat him because he was "restrained by the unfortunate circumstances of the car accident" not the officers' conduct); *Badway v. City of Philadelphia*, No. 07-1333, 2010 WL 915002, at \*6 (E.D. Pa. Mar. 15, 2010) (911 operator did not subject an individual to involuntary restraint by responding to a call); *Regalburto v. City of Philadelphia*, 937 F. Supp. 374, 379–80 (E.D. Pa. 1995) (911 operator did not affirmatively curtail a caller's freedom by reassuring the caller help was on the way); *Bush v. City of Utica*, 948 F. Supp. 2d 246, 257 (N.D.N.Y. 2013) (911 operator did not restrain caller by telling caller to stay put and get to a window); *Est. of Tester ex rel. Tester v. Village at Hamilton Pointe, LLC*, No. 24-cv-00005, 2024 WL 443304, at \*11 (S.D. Ind. Sept. 20, 2024) (explaining that while a woman made "multiple calls for assistance to 911 and argues that she was confined to her bed due to her medical conditions, this does not mean that she was in . . . custody").

B

Rankine next seeks to hold the 911 operators liable under the state-created-danger theory. In *DeShaney*, in holding the state officers did not violate due process by failing to protect the child from his father's abuse, the Supreme Court distinguished cases holding that a state must protect individuals who are in custody, noting: "While the State may have been aware of the dangers that [the child] faced, it played no part in their creation, nor did it do anything to render him more vulnerable to them." *DeShaney*, 489 U.S. at 190. From this sentence, the Third Circuit Court of Appeals crafted the state-created-danger exception to the general rule that due process confers no right to governmental aid. *Hargrove v. City of Philadelphia*, No. 21-4082, 2025 WL 3516783, at *2–3 (E.D. Pa. Dec. 8, 2025). To plead state created danger, Rankine must allege (1) Brice suffered a foreseeable and fairly direct harm, (2) the 911 operators acted with a degree of culpability that shocks the conscience, (3) Brice was a foreseeable victim and (4) the 911 operators affirmatively used their authority to create a danger to Brice or make her more vulnerable to the danger. *Bright*, 443 F.3d at 281. The operators challenge the sufficiency of the fourth element.

The affirmative-act requirement serves to "distinguish cases" where state officers "might have done more" from cases where they "created or increased the risk itself." *Morrow v. Balaski*, 719 F.3d 160, 179 (3d Cir. 2013) (en banc) (citation omitted). Rankine must allege that the 911 operators "exercised" their "authority" to "affirmative[ly] act[]" in a way that "created a danger to [Brice] or rendered [her] more vulnerable to danger." *Ye v. United States*, 484 F.3d 634, 639 (3d Cir. 2007).

7

The 911 operators did not create a danger to Brice. Brice's medical condition, not the operators, put her in that position. *Sargi*, 70 F.3d at 913. Nor did the operators render Brice more vulnerable to danger. She was already suffering from a medical emergency when she called 911. *Id.* At bottom, Rankine alleges the operators failed to ensure Brice received medical care. (Compl. ¶ 71) (alleging the 911 operators failed to provide Brice with prompt medical care). But a failure to act is not an affirmative act under the state-created-danger theory. *Sanford v. Stiles*, 456 F.3d 298, 312 (3d Cir. 2006).

*Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996), supports that the operators did not create a danger to Brice or render her more vulnerable to danger. On a cold night in January, police officers stopped an intoxicated couple, separated them and then let the wife walk home alone. *Id.* at 1209. She fell and suffered permanent brain damage. *Id.* at 1203. The officers created a danger to the wife or rendered her more vulnerable to danger because they separated her from her husband and forced her to stagger home alone. *Id.* at 1209. Given that her husband was escorting her home, the wife was in a "worse position after the police intervened." *Id.* Unlike the wife in *Kneipp*, however, Brice was in danger when she called 911.

*L.R. v. School District of Philadelphia*, 836 F.3d 235 (3d Cir. 2016), hurts rather than helps Brice. There, a kindergarten teacher allowed a student to leave class with an adult who failed to produce identification and the adult later sexually assaulted the student. *Id.* at 240. The teacher created a danger to the student or made her more vulnerable to danger because he "exposed" her to "a danger she would not have

otherwise encountered." *Id.* at 243.  But here the operators did not "expose[] [Brice] to any danger to which she was not already exposed."  *Sargi*, 70 F.3d at 913.

C

Rankine's failure to state substantive-due-process claims against the 911 operators dooms her claim against the County.  Section 1983 does not permit a plaintiff to hold a municipality automatically liable for the unconstitutional actions of its employees under a theory of vicarious liability.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  But a municipality may be held liable if the plaintiff establishes the municipality's policy or custom led to a violation of her constitutional rights.  *Id.* at 694–95.  To state a *Monell* claim, Rankine must allege (1) Brice suffered a constitutional violation and (2) a municipal policy or custom caused the violation.  *Id.* at 690–92.  Thus, it is "well-settled" that "if there is no violation in the first place, there can be no derivative municipal claim."  *Mulholland v. Gov't County of Berks*, 706 F.3d 227, 238 n.15 (3d Cir. 2013).  Because Rankine fails to plead a substantive-due-process claim, she cannot allege the County caused Brice harm.  *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam).

D

Finally, Rankine brings state-law negligence, wrongful death and survival claims against all defendants, including the County and the 911 operators.  Wrongful death and survival actions require an underlying cause of action (like negligence).  *Cappel v. Aston Twp. Fire Dep't*, 693 F. Supp. 3d 467, 496 (E.D. Pa. 2023).

The County argues it is immune from any state-law claim.  The Political Subdivision Tort Claims Act provides that "no local agency shall be liable for any

9

damages on account of any injury to a person . . . caused by any act of the local agency or an employee thereof." 42 Pa. Stat. and Cons. Stat. Ann. § 8541. The County is a local agency because it is a government unit. *Id.* § 8501. And it employs the 911 operators. Thus, the County cannot be "liable" for any injury to Brice allegedly caused by the 911 operators. *Id.* § 8541. No exception to government immunity applies. *Id.* § 8542(b). Rankine cannot bring negligence, wrongful death and survival claims against the County.

The County also suggests the 911 operators are similarly immune from suit. In Pennsylvania, 911 operators "shall not be liable for an act or omission to a person who directly or indirectly uses a 911 emergency service or provides information to 911 systems" "except for willful or wanton misconduct." 35 Pa. Stat. and Cons. Stat. Ann. § 5311.1(b). This case involves an act or omission to Brice, who called 911. But the County fails to make any argument as to whether Rankine's allegations plausibly describe willful or wanton misconduct. Willful conduct means the person "desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue." *Evans v. Phila. Transp. Co.*, 212 A.2d 440, 443 (Pa. 1965). Wanton misconduct means the person acted unreasonably "in disregard of a risk known to him." *Id.* Rankine alleges the 911 operators knew Brice was suffering a serious medical emergency because she was moaning in pain, grasping for air and saying "help me." But the operators failed to send any medical responders to her, even after learning no police officer reached her. Reading these allegations in the light most favorable to Rankine, the Court cannot conclude at this stage the 911 operators are immune.

IV

A court should "freely give leave" to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  If a "civil-rights complaint fails to state a claim," a court "must grant leave to amend the complaint unless amendment would be futile."  *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 113 (3d Cir. 2018).  Amendment is futile if no new facts could fix the original complaint's problems.  *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988).

It would be futile for Rankine to amend her deliberate indifference and state-created-danger claims against the 911 operators.  She could allege no new facts to plausibly show the operators restrained Brice, nor could she allege new facts to plausibly establish the 911 operators affirmatively acted to create a danger to Brice or make her more vulnerable to danger.  Because Rankine cannot state substantive-due-process claims, it would be futile for her to amend her *Monell* claim against the County.  Finally, no new facts could overcome the County's immunity from Rankine's state-law claims.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

Gerald J. Pappert, J.

11