**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ARIELLMARIE RANKINE

          *Plaintiff,*

    v.

DELAWARE COUNTY, et al.,

          *Defendants.*

CIVIL ACTION
NO. 26-3072

**Pappert, J.**                                                                                    **June 30, 2026**

## MEMORANDUM

Deborah Brice called 911 after experiencing a medical emergency in her friend's apartment at the Residences at Chestnut Ridge.  Sadly, no police officer or medical responder reached her in time and she died.  Ariellmarie Rankine, the administratrix of Brice's estate, sued (among others) VS Wallingford LLC, which owns the Residences, under Pennsylvania law.  Wallingford moves to dismiss the claims against it and the Court denies its motion.

I

During the first week of May 2024, Brice was staying with her friend Mary Boardley, acting as Boardley's caregiver.  (Compl. ¶¶ 24, 26–27, Dkt. No. 1.)  Brice was sixty-nine, and Boardley was "elderly."  (*Id.* ¶ 24.)  Boardley lived at the Residences at Chestnut Ridge, an apartment complex in Delaware County.  (*Id.* ¶¶ 19, 24–25.)

In the early morning hours of May 6, Brice had a medical emergency, (*id.* ¶¶ 28, 31), and at 4:42 am, called 911, (*id.* ¶ 28).  Brice was struggling to answer questions, groaning, gasping for air and saying "help me."  (*Id.* ¶¶ 31–32, 71.)  A few minutes

later, another 911 operator joined Brice's call.  (*Id.* ¶ 35.)  Instead of sending emergency medical responders to Brice, the operators sent a local police officer.  (*Id.* ¶ 40).

The officer arrived at Chestnut Ridge around 4:50 am but the front door was locked.  (*Id.* ¶¶ 41, 43.)  No Chestnut Ridge employee was present to let the officer inside, and the apartment complex did not have a "knox box," a device that allows emergency responders to access buildings.  (*Id.* ¶¶ 63–65.)  The officer left the scene, making no effort to find or break his way into the complex.  (*Id.* ¶ 42.)  The 911 operators learned that the officer did not reach Brice, but they made no further effort to help her.  (*Id.* ¶¶ 44–46.)

About an hour later, at 6:05 am, Boardley's friend called Chestnut Ridge and asked one of its employees to check on Boardley and Brice.  (*Id.* ¶¶ 49–52.)  The employee went to Boardley's room but did not go inside and told Boardley's friend that the women were sleeping.  (*Id.* ¶¶ 54–55.)  Boardley's friend asked the employee to enter the apartment and confirm they were "alive and well."  (*Id.* ¶ 56.)  The employee said she would but only after finishing a task she had just started.  (*Id.* ¶ 57.)  At some point after 7:00 am, the employee found Brice dead in a chair, holding her phone.  (*Id.* ¶ 58.)  The coroner said Brice died at 7:05 am, approximately two hours after she had called 911.  (*Id.* ¶¶ 59–60.)

In Count Seven of her Complaint, Rankine alleges Wallingford violated its duty of care to Brice by, among other things, locking the front door of the apartment building and failing to have a knox box or other device that would allow emergency responders to access the building.  (*Id.* ¶¶ 168–82.)  In Counts Twelve and Thirteen, Rankine

2

asserts wrongful death and survival actions.[1]  (*Id.* ¶¶ 250–55.)  Before filing this lawsuit, Rankine sued Wallingford in state court alleging the same negligence claim. (State Court Compl. at 23–25, Dkt. No. 13.)

II

A

Wallingford moves to dismiss on abstention grounds.  In *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), the Supreme Court held a federal court may abstain from hearing a case when it involves the same parties and issues as a parallel case in state court.  *Id.* at 817–20.  A two-step test governs whether *Colorado River* applies.  First, the Court must determine whether the state and federal actions involve the same parties and substantially similar claims.  *Yang v. Tsui*, 416 F.3d 199, 204 n.5 (3d Cir. 2005).  Second, the Court must decide whether extraordinary circumstances justify abstention.  *Nationwide Mut. Fire Ins. v. George V. Hamilton, Inc.*, 571 F.3d 299, 308 (3d Cir. 2009).  Assuming Rankine's state and federal actions are parallel, no extraordinary circumstance justifies abstention.

The Court of Common Pleas of Delaware County has not assumed *in rem* jurisdiction over any property.  *Ryan v. Johnson*, 115 F.3d 193, 196 (3d Cir. 1997). Nothing indicates it would be inconvenient for Wallingford to litigate in federal court in Philadelphia.  *Sea Colony, Inc. v. Alcan Aluminum Corp.*, 653 F. Supp. 1323, 1327 (D. Del. 1987).  Wallingford points to no congressional policy favoring abstention in these circumstances.  *Ryan*, 115 F.3d at 198.  Rankine's state-court lawsuit has barely made it past the pleading stage.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460

---

[1]    In Count Eleven, Rankine asserts a duplicative negligence claim.

3

U.S. 1, 21 (1983).  And her claims against Wallingford involve "straightforward state negligence law," nothing "so intricate and unsettled that resolution in the state court[] might be more appropriate."  *Ryan*, 115 F.3d at 200.  Finally, even if the Delaware County Court of Common Pleas will protect the parties' rights, this alone does not justify abstention.  *Id.*

B

Wallingford also moves to dismiss Rankine's requests for punitive damages. Federal Rule of Civil Procedure 8(a)(2) provides that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  And Rule 12(b)(6) permits a district court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  *Id.* 12(b)(6).  Taken together, the two rules require a plaintiff to allege sufficient "facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The first step in determining whether a plaintiff has stated a plausible claim is to "tak[e] note of the elements" underlying her claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009); *Santiago v. Warminster Township*, 629 F.3d 121, 129–30 (3d Cir. 2010).  The second step is to examine the plaintiff's complaint and determine whether the factual allegations "plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.

In Pennsylvania, the "right to punitive damages is merely an incident to a cause of action and not a cause of action in and of itself."  *Shanks v. Alderson*, 582 A.2d 883, 885 (Pa. Super. Ct. 1990).  Thus, "a motion to dismiss is not the proper mechanism to challenge a prayer for punitive damages."  *Gale v. Unifi Aviations, LLC*, No. 24-CV-01355, 2025 WL 991100, at *2 (S.D. Cal. Apr. 2, 2025); *Jones v. Francis*, No. 13-04562,

4

2013 WL 5603848, at *2 (D.N.J. Oct. 11, 2013) (explaining Rule 12(b)(6)'s plausibility standard "addresses the types of facts a plaintiff must allege to make out a cause of action, not the types of damages the alleged cause of action may eventually warrant"); *see id.* (explaining that "once a civil complaint shows a claim to be" plausible, Rule 12(b)(6) does not require a court to "scrutinize the damages requested by plaintiff as redress for that claim").

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

Gerald J. Pappert, J.